1  **WAGNER LAW GROUP PC**
    **(formerly known as Wagner Jones**
2    **Kopfman & Artenian, LLP**
   Nicholas J.P. Wagner #109455
3  1111 E. Herndon Avenue, Suite 317
   Fresno, California 93720
4  (559) 449-1800
   (559) 449-0749 Fax
5  Email: bwagner@wagnerjones.com

6
   Mark Schallert (Bar No. 112542)
7  Law Office of Mark Schallert
   310 29th Avenue
8  San Francisco, CA 94121
   Telephone:  (415) 994-6537
9  Email: mark@schallertlaw.com

10 Attorneys for PLAINTIFFS ROSEMARY HINOJOSA MULLINS, as an individual, and
   as guardian ad litem for KAYLA ALICIA MULLINS
11

12              **UNITED STATES DISTRICT COURT**

13             **EASTERN DISTRICT OF CALIFORNIA**

14

15 ROSEMARY HINOJOSA MULLINS, as     Case No. 1:21-cv-00405-AWI-SAB
   an individual, and as guardian ad litem for
16 KAYLA ALICIA MULLINS (a minor);   **FIRST AMENDED COMPLAINT FOR**
                                      **DAMAGES:**
17              Plaintiffs,           1.  **42 U.S.C. Section 1983 –Violation of**
                                          **the Fourteenth Amendment**
18 vs.                                2.  **42 U.S.C. Section 1983 – Use of**
                                          **Excessive Force in Violation of the**
19 COUNTY OF FRESNO, FRESNO              **Fourth Amendment**
   COUNTY SHERIFF'S DEPARTMENT;      3.  **California Civil Code §52.1 – Bane**
20 and DOES 1 through 25;                **Act Violation**
                                      4.  **Wrongful Death and Intentional**
21              Defendants.              **Infliction of Emotional Distress**
                                      5.  **Survivor**
22                                    6.  **Battery**
                                      7.  **Negligence**
23                                    8.  **Injunctive Relief**

24                                    **JURY TRIAL DEMANDED**

25

26

27

28

_____
                FIRST AMENDED COMPLAINT FOR DAMAGES

1    COMES NOW, Rosemary Hinojosa Mullins, as an individual, and as guardian ad litem for

2 Kayla Alicia Mullins (a minor) and alleges as follows:

3    *The Parties*

4    1. Plaintiff Rosemary Hinojosa Mullins ("Mrs. Mullins" or "Rosemary Mullins") is the

5 biological mother of Kenneth Mullins ("Mr. Mullins" or "the deceased"). Kayla Alicia Mullins is a

6 minor; she is Mr. Mullins' only biological daughter, his only surviving heir, and the successor in

7 interest to Mr. Mullins' surviving claims. Mrs. Mullins is the guardian ad litem for her

8 granddaughter. Mrs. Mullins filed this civil action on her own behalf and on behalf of her

9 granddaughter because her unarmed son, whose only crime was trespassing, was shot to death by

10 deputies of the Fresno County Sheriff's Department on March 6, 2020.

11    2. Defendant Fresno County is a local public agency within the meaning of Government

12 Code Section 6252(d); Defendant Fresno County Sheriff's Department is a department within the

13 County of Fresno. Both Defendants operate within the City and County of Fresno.

14    3. The true names and capacities, whether individual, corporate, employed, agent, associate,

15 or otherwise, of the Defendants named herein as DOES 1-25, inclusive, are unknown to Plaintiffs,

16 who therefore sues said Defendants by such fictitious names. Plaintiffs will amend this Complaint

17 to show their true names and capacities when the same has been ascertained. Plaintiffs are informed

18 and believes and, upon such information and belief, alleges that each of the Defendants designated

19 herein as "DOE" is legally responsible in some manner for the events and happenings referred to,

20 and proximately caused the damages to Plaintiffs herein alleged.

21    4. Plaintiffs are informed and believe that Defendants, and each of them, are and were the

22 agents and/or employees of each of the remaining Defendants and were acting within the course and

23 scope of such employment and/or agency in performance of the acts herein alleged. Each and every

24 Defendant named herein is jointly and severally responsible and liable to Plaintiffs for the damages

25 alleged herein.

26    *The Death of Mr. Mullins at the Hands of Sheriff Deputies*

27    5. Kenneth Mullins was 32-years old when he was found sleeping at Jaime's Auto

28 Dismantling by the shop's owner at approximately 5:00 p.m. on a Friday afternoon, March 6, 2020.

1

FIRST AMENDED COMPLAINT FOR DAMAGES

1   The auto dismantling shop is located in a one-story warehouse at 2438 S. West Ave. in a non-
2   residential neighborhood of Fresno within a mile of the Fresno Airport. The business was closed for
3   the day, and there were no other persons, employees, or customers in the vicinity when the business
4   owner entered his building and saw Mr. Mullins sleeping. The owner called the Fresno County
5   Sheriff's Department about a potential trespasser. The business owner reported that he had had no
6   contact with Mr. Mullins, who was presumed to simply be sleeping on the premises.

7         6. Plaintiffs are informed and believe that the Sheriff's Department dispatched several
8   deputies to the scene without first assessing whether the deputies being sent were appropriate
9   choices for the task. Even though they are public institutions, Defendants have to date withheld
10  critical information about the processes and decisions that resulted in Mr. Mullins' death.
11  Nonetheless, based on reports by news agencies, Plaintiffs are informed and believe that, upon
12  arrival, several Fresno Sheriff's Department deputies ("the Deputies") faced a situation for which
13  they had not been trained; that the Deputies failed to reasonably assess what risk, if any, Mr. Mullins
14  posed and instead chose to infer that Mr. Mullins was probably armed; that Defendants, and each of
15  them, were told that some sort of firearm was kept in the building but had no basis for believing that
16  Mr. Mullins had located the firearm or would have had any desire to use a firearm; that the Sheriff's
17  Department chose to dispatch the Deputies, rather than more experienced personnel, precisely
18  because there was no real danger to law-enforcement personnel in such a situation unless the
19  Deputies were to create the danger; and that Defendants failed to request or send more experienced
20  officers once the situation evolved into a 30-minute standoff.

21        7. In an attempt to place the Deputies' conduct in as favorable a light as possible, the Fresno
22  County Sheriff's Department issued the following factual description of Mr. Mullins' final minutes
23  of life.

24        Deputies arrived and surrounded the building. They used a loudspeaker to call out
25        to the man for approximately 30 minutes, but he never responded…A few minutes
26        later he exited the building. Two deputies staged nearby made contact with the
27        man and gave him commands. The suspect did not comply, and two deputies fired
28        their guns multiple times, striking the man. He was pronounced deceased at the

scene…A closer examination of Mullins showed he was not in possession of a weapon.

Fresno County Sheriff's Office, "*Suspect Dies During Deputy Involved Shooting*" March 9, 2020 (fresnosheriff.org).

8.  Kenneth Mullins was pronounced dead at the scene from a perforation of the brain and penetration of the skull caused by gunshot wounds to the head by Fresno County Deputy Sheriffs. (*Certificate of Death: Kenneth W. Mullins*. Filed March 12, 2020, State of Calif., Dept. of Coroner, Ref. No. 20-03-063). Plaintiffs are informed and believe that the autopsy is definitive proof that one or more of the Deputies used a "kill shot" to Mr. Mullins head, even though Mr. Mullins was unarmed and apparently in no condition to protect himself let alone injure another.

9. The Fresno County Deputy Sheriffs' acts and omissions on March 6, 2020, including that of DOES 1-25, and each of them, evidence the County of Fresno's failure to train its officers to prevent a violation of its citizens' rights. The deceased did not have a gun, nor did he have any object which resembled a gun in his hand or on his person. Plaintiffs are informed and believe based on Defendants' own press release that Mr. Mullins never threatened or sought to injure any person, let alone the Deputies, prior to being shot dead. At no time did any of the Deputies use pepper spray, a baton, a taser, or any other non-lethal weapon; instead, the Deputies acted consistently with the policies and training of the Fresno Sheriff's Office by going directly to the use of lethal force rather than first seeking to use less lethal means. The deputies' decision to shoot Mr. Mullins multiple times—including one or more "kill shots" to his head—evinced their intention to execute the unarmed man for the act of trespassing, rather than maim or otherwise disable their victim in order to apprehend him.

10. At all times, Defendants, and each of them, have denied any wrongdoing by the Deputies even as Defendants, which are public entities, have failed to disclose the details of Mr. Mullins' death.  As one example, Defendants have refused to confirm the reports that the Deputies who shot Mr. Mullins were volunteer deputies, i.e., amateurs who are allowed to carry and use firearms under color of law.

FIRST AMENDED COMPLAINT FOR DAMAGES

1

*Standing*

2       11. On or about May 22, 2020, Plaintiff Rosemary Mullins timely filed a claim with the

3  County of Fresno on her own behalf, as well as in her capacity as the guardian-ad-litem for her

4  granddaughter, Kayla Alicia Mullins, who is the successor in interest to her father's estate.

5  Thereafter, on August 4, 2020, the County of Fresno rejected the claim filed by Plaintiffs. Plaintiffs

6  have therefore complied with the claim-filing prerequisites of the California Tort Claims Act prior

7  to the filing of this Complaint.

8       12. Plaintiff Kayla Mullins is the sole surviving heir of, and successor in interest to, her

9  father, the deceased. On or about April 9, 2021, Plaintiff Kayla Mullins, acting through her guardian

10  ad litem, Mrs. Rosemary Mullins, is filing a declaration in this Court satisfying the requirements of

11  California Code of Civil Procedure section 377.30, the survivor statute. Plaintiffs therefore have

12  standing to assert all of the claims, state and federal, that have survived Mr. Mullins' death, and

13  hereby bring all such surviving claims in that capacity. Each Plaintiff has also been wrongfully

14  deprived of her constitutional rights, including the right to a familial relationship with the deceased

15  who was both a father and a son. Plaintiffs have been denied Mr. Mullins financial and emotional

16  support, as well as his companionship and love; they have paid burial and other expenses due to his

17  wrongful death, have incurred attorneys' fees and costs in the pursuit of these rights, and have

18  suffered their own financial and personal injuries as a result of the wrongful conduct of Defendants,

19  and each of them.

20

*Monell Allegations*

21       13. As alleged in greater detail in the following paragraphs, Defendants have publicly

22  adopted policies that promote the customary use of excessive and deadly force in situations, like

23  here, where less extreme procedures would accomplish the public's interest. Defendants failed to

24  properly vet the persons permitted to carry firearms under color of law, then failed to train them to

25  make accurate risk assessments and to respond with appropriate force, and failed again to discipline

26  deputies as a deterrent to future abuse. These systemic failures served to promote the customary use

27  of excessive and deadly force by sheriff's deputies that is unjustified by legitimate law enforcement

28  objectives. Plaintiffs are informed and believe that the policies that promote the use of excessive

4

FIRST AMENDED COMPLAINT FOR DAMAGES

1    and deadly force are reflected in and reinforced by Defendants' methods for hiring, arming, training,

2    and disciplining their deputies.

3        14. *Defendants' Policies.* Defendants' policies for the use of deadly force are reflected, inter

4    alia, in the statements made by the head of the Fresno Sheriff's Department, Margaret Mims. In

5    2018, Sheriff Mims became an outspoken critic of attempts to reign in the use of excessive force by

6    sheriffs when she challenged legislation that sought to require sheriffs and other law enforcement

7    personnel to use deadly force only when there were no reasonable alternatives. Sheriff Mims gave

8    a news conference in which she stated any such "requirements or restrictions" would inhibit her

9    sheriffs in performing their duties. In 2020, near in time to the death of Mr. Mullins and in response

10   to nationwide calls to de-escalate law enforcement encounters with unarmed civilians, Sheriff Mims

11   chose to emphasize that her deputies should have "maximum flexibility" to use "whatever" methods

12   they need to control suspects.  In dismissing the idea of a graduated response by deputies, Sheriff

13   Mims has stated that "I think that's important that we don't create a ladder where you have to go

14   from one step to the next" before using deadly force.  By picking public forums to express her views,

15   Sheriff Mims spoke for Defendants and was also providing guidance to her deputies. In doing so,

16   she purposefully reinforced the Defendants' policy of promoting the customary use of deadly force

17   even if less deadly means were available, which is precisely what happened with Mr. Mullins.

18       15. Plaintiffs are informed and believe that Defendants, acting through Sheriff Mims among

19   others, have sought to minimize the seriousness of deputies using deadly force, such that Sheriff

20   Mims's response to recent protests over police violence was to lament that the press did not

21   emphasize all the times that deadly force was not used. A visit to the Sheriff Department's website

22   finds click bait entitled "Officer Involved Shooting Myths," which will lead the reader to third-party

23   sites promoting irresponsible views on police shootings. Through these actions, inter alia,

24   Defendants publicized their policy of supporting their deputies in the use of excessive and deadly

25   force irrespective of the merits.

26       16. Plaintiffs are informed and believe that Defendants have a policy of recruiting, hiring,

27   and arming all deputies regardless of the individual's qualifications to make life and death decisions

28   in the field. Plaintiffs are informed and believe that Defendants fail to conduct reasonable

1   background checks of applicants, including a failure to determine if applicants have failed in
2   comparable positions in other jurisdictions and to check social-media background to identify
3   persons likely to misuse police power in service of their political or racial objectives.

4       17. As a further example of Defendants' reckless policies towards the use of force,
5   Defendants allow persons to work for free as deputies for up to 20 hours a month. Plaintiffs are
6   informed and believe that this so-call Deputy Reserve Unit (DRU) consists of approximately 20+
7   volunteers; that Defendants fail to adequately screen these volunteers; that these volunteers are
8   armed with handguns and given authority under color of law to shoot and kill without adequate
9   training to make realistic threat assessments or employ less deadly strategies. Plaintiffs are informed
10  and believe that, rather than limit the role played by volunteers to providing support services to more
11  experienced deputies when there is a potential for the use of deadly force, Defendants allow
12  amateurs to make life and death judgments.

13      18. Plaintiffs are informed and believe that Defendants have recklessly continued to allow
14  volunteers to carry and discharge firearms under the auspices of the Sheriff's Department despite
15  knowing of the fatal consequences of such a policy. Defendants have maintained their volunteer
16  policy despite knowing of the 2015 shooting of the unarmed Eric Harris in Tulsa, Oklahoma, at the
17  hands of a volunteer deputy. That volunteer deputy claimed that he meant to fire a taser instead of
18  his handgun. The shooting was widely publicized, and the deputy was convicted and sentenced to
19  prison. It was widely reported that the Tulsa municipality paid $6.0 million to Harris's family to
20  settle their claims. Plaintiffs are informed and believe that Defendants, and each of them, were either
21  aware of the Eric Harris shooting and its aftermath or their ignorance was the result of deliberate
22  indifference to the risks posed by volunteer deputies. Plaintiffs are informed and believe that, despite
23  this knowledge, Defendants continue to arm volunteer deputies based on the short-term benefits of
24  free labor, a policy choice that elevates small economic savings over the constitutional rights of
25  Fresnans.

26      19. *Inadequate Training.* Plaintiffs are informed and believe that Defendants have failed,
27  and continue to fail, to train deputies in a manner that would reduce the use of excessive and deadly
28  force. In a 2020 news conference, Fresno County Sheriff Margaret Mims gave lip service to the idea

1  of revamping training to teach deputies how to de-escalate and avoid violence. Plaintiffs are

2  informed and believe that, in truth, Defendants have not instituted any such new training and that

3  Sheriff Mims' statements were not sincere but were intended merely to mollify concerned Fresnans

4  without instituting the reforms needed to avoid needless deaths.

5      20.  Plaintiffs are further informed and believe that Sheriff Mims and her Department have

6  consistently avoided any training that would emphasize how to avoid deadly force at important steps

7  during an encounter with a potentially dangerous person. To the contrary, Sheriff Mims has stated

8  that "I think that's important that we don't create a ladder where you have to go from one step to the

9  next," and other words to that effect, thereby eschewing one of the most effective methods for

10  avoiding the shooting of unarmed Fresnans while also safeguarding deputies.

11      21. Plaintiffs are informed and believe that Defendants have failed to train full-time deputies

12  in proper techniques for de-escalating conflicts, while training for volunteer deputies is de

13  minimis. Plaintiffs are informed and believe that Defendants do a poor to nonexistent job in training

14  deputies on the use of non-lethal force such as tasers, batons, projectiles, and pepper spray, any one

15  of which would have spared the life of Mr. Mullins even if they were still excessive for that

16  situation. Defendants, and each of them, were not responding in exigent circumstances when they

17  first confronted Mr. Mullins, but instead, deputies had more than adequate time to follow their

18  training guidelines. Moreover, the deputies' superiors had more than adequate time to implement

19  best practices for dealing with a man who was likely homeless and possibly disoriented after

20  deputies allegedly blasted him with extremely loud noise for 30 minutes. Here best practices would

21  have compelled a reasonable defendant to send more experienced personnel to the scene among

22  other actions. The events surrounding Mr. Mullins' death demonstrate how Defendants were trained

23  to act when given as much time for calm deliberation as is possible in an adverse interaction, and

24  yet the best practices of the Fresno Sheriff's Department could yield no better result than the

25  needless shooting of an unarmed man.

26      22. *Custom and Practice.* Defendants have a customary practice of using excessive and

27  deadly force under color of law. The State of California--pursuant to the URSUS Use of Force Data

28  Collection Program--and various non-profit organizations have helped create databases with

7

1  statistics comparing the practices by and between the 58 sheriff's departments in California.

2  Plaintiffs are informed and believe that these statistics are reliable because much of the reporting to

3  URSUS is done under legal obligation by counties and law-enforcement agencies. Plaintiffs are

4  informed and believe that the database is most useful and accurate in tracking and reporting deaths

5  at the hands of police, including whether the deceased was armed; on the other hand, the available

6  data grossly underestimates the amount of excessive force because Defendants and other counties

7  have a practice of only reporting excessive force when it results in death.

8        23. The data discloses the following facts about Defendants' practices in the years leading

9  up to Mr. Mullins' death:

10  (a)  From 2013-2019, acting in the course of their duties under color of law, Fresno Sheriff's

11        deputies shot and killed eight persons, at least three of whom were unarmed. Plaintiffs are

12        informed and believe that Defendants' deputies kill three civilians per every 10,000 arrests,

13        a higher rate than in 80% of the 58 other sheriff's departments. Neary once every 11,000

14        arrests, an unarmed civilian is killed by Fresno Sheriff deputies. Since Defendants reportedly

15        arrest between 4,000-5,000 persons per year, it is inevitable that Defendants' misuse of

16        deadly force will result in additional unjustified killings absent a change in culture, custom,

17        practice, and procedure. Mr. Mullins' death was the inevitable consequence of Defendants'

18        purposeful indifference to these statistics. By way of comparison, there were approximately

19        77 homicides during that same period, which gives a ratio of one police shooting for every

20        ten homicides, one of the worst ratios in California.

21  (b)  By way of further comparison, NO deputy was shot and killed by a civilian during that

22        seven-year period. Plaintiffs are informed and believe that Defendants exaggerate the risks

23        to deputies in order to deflect questions about the deputies' use of excessive force so that

24        those who seek reasonable restrictions are accused of putting law-enforcement lives in

25        danger. Plaintiffs are informed and believe that Defendants' media tactics and training

26        policies predispose the deputies to overestimate the risks posed by persons such as Mr.

27        Mullins and to use deadly force when less deadly means would be efficacious.

28

8

FIRST AMENDED COMPLAINT FOR DAMAGES

(c) Defendants have built a culture in which deputies are trained to use deadly force and, consistent with the statements of Sheriff Mims, to eschew a graduated response when a civilian is uncooperative. Plaintiffs are informed and believe that the Fresno Sheriff Department ranks in the bottom quartile of counties on metrics measuring the misuse of deadly force, including the frequency of deadly force per arrest and the percentage of unarmed victims as a percentage of total killings. Moreover, in each of the eight instances in which Fresno sheriffs used deadly force, the sheriff's deputies NEVER tried to use less-than-deadly force, even when the ultimate victim was unarmed. These customary practices are especially dangerous when the power over life and death is wielded by amateur deputies armed with handguns and operating under color of law.

24. *Failure to Discipline*. Plaintiffs are informed and believe that the above policies, procedures, custom and practices are reinforced by Defendants' failure to install and administer a meaningful system of discipline, i.e., discipline that serves as a deterrent to the use of excessive force and as an incentive for the use of de-escalation procedures. Of the 134 civilian complaints filed against Fresno sheriffs between 2013-2019, only 3% of the rulings favored the civilians. Given Sheriff Mims's publicly stated desire to give deputies "maximum flexibility" in using force, it is not surprising that the failure to discipline was one of several factors that earned the Fresno Sheriff's department one of worst ratings for "accountability" in California (bottom 10%). Plaintiffs are informed and believe that Defendants have chosen not to provide deputies with body camera, even though a majority of jurisdictions use them. The absence of body cams means there is often no objective evidence to resolve conflicting testimony, a stalemate that favors Defendants, and each of them. Plaintiffs are further informed and believe that the procedural requirements for bringing complaints, as well as the manner in which they are processed and ultimately adjudicated, are skewed in favor of the deputies, such that an overhaul of the Defendants' disciplinary system is required to prevent the future, unjustified use of deadly force.

25. The failings of Defendants' disciplinary system are most obvious when dealing with volunteer deputies since, rather than face discipline, there is nothing to prevent a volunteer from just walking away from his nonpaying position and its impotent disciplinary system. Plaintiffs are

1  informed and believe that volunteers do not have salaries, pension benefits, or the other incentives

2  full-time deputies have to conform their behavior to avoid civil liability. The result is that the least

3  trained are given the widest latitude.

4      26. *Ratification.* Defendants, and each of them, who had policy-making authority, ratified

5  the Deputies' violations of Kenneth Mullins' constitutional rights. At no time since Mr. Mullins was

6  shot and killed has the County of Fresno, or its sheriff's department, acknowledged any wrongdoing

7  by any of the Deputies involved in the subject killing. In fact, Defendants, and each of them, have

8  attempted to explain and justify its officers' actions and the appropriateness of their conduct on the

9  day of the killing. Defendants' comments, statements, and actions following Mr. Mullins' death are

10  examples of the Defendants' long history of public advocacy on behalf of their law enforcement

11  personnel regardless of the merits, which reinforces a culture and belief that deputies can use deadly

12  force with impunity.

13      27. The conduct by Defendants, and each of them, reflects systematic and deliberate

14  indifference to the use of excessive, and often deadly, force in encounters with civilians even when

15  such force is a grossly disproportionate response to a situation. Based upon information and belief,

16  the County of Fresno's supervisory and policy making personnel have recklessly and with deliberate

17  indifference taken no effective steps to end the policies and practices that led to Mr. Mullins' death.

18      28. As a direct and proximate result of Defendants' and DOES 1-25's acts, conduct,

19  practices, policies and procedures described above, plaintiffs have suffered the loss of their son and

20  father's life, respectively, resulting in the loss of Kenneth Mullins love, companionship, comfort,

21  care, assistance, protection, affection, society and emotional support.

22                    **FIRST CAUSE OF ACTION**

23      **42 U.S.C. SECTION 1983 – FOR VIOLATION OF PLAINTIFFS' FOURTEENTH**

24            **AMENDMENT RIGHTS – AS TO ALL DEFENDANTS**

25      29. Plaintiffs reallege the allegations of paragraphs 1 through 28. Plaintiffs have standing to

26  bring this claim as Mr. Mullins's successor in interest.  Plaintiffs Rosemary Mullins and Kayla

27  Mullins also bring this claim to vindicate their own rights under the Fourteenth Amendment,

28  including the right to a familial relationship with Mr. Mullins, who was a son and father, and

1  Plaintiffs' loss of the love, care, support, and affection that was denied to them when Defendants,
2  and each of them, brought about Mr. Mullins's death.

3      30. Defendants, and each of them, violated the Fourteenth Amendment rights of Mr. Mullins,
4  his mother, and his daughter when the Deputies used excessive and deadly force under color of law
5  against an unarmed man. Defendants' conduct further violated Plaintiffs' Fourteenth Amendment
6  rights by wrongfully depriving Mr. Mullins of his life and his mother and daughter of their familial
7  relationship. Defendants, and each of them, failed to reasonably assess the risk presented by Mr.
8  Mullins, failed to dispatch better-trained deputies to the scene even though there was no urgency to
9  resolve the situation other than the deputies' own desires to confront Mr. Mullins, failed to consider
10  the use of less lethal force, and chose to use deadly force that was unrelated to legitimate law
11  enforcement objectives.

12      31. All of the acts and omissions of Defendants, and each of them, were done under color of
13  law and in the exercise of the authority granted them by the County of Fresno and the Fresno
14  Sheriff's Department.

15      32. As set forth above, Defendants County of Fresno and the Fresno Sheriff's Office have
16  ratified the conduct of the Deputies who shot and killed Mr. Mullins.  Further, Defendants have
17  announced and enacted policies that encourage the use of deadly force, have failed to train their
18  deputies to accurately assess risk and to resolve situations with less-than-lethal force, have failed to
19  provide deputies with body cameras and other equipment than can minimize the use of excessive
20  force, have established a custom and practice of using excessive force, and have failed to discipline
21  miscreant deputies or otherwise seek to reduce the risks of future wrongful shootings. Defendants
22  County of Fresno and the Fresno Sheriff's Office are therefore liable for their own misconduct and
23  poor policies, which were a prime cause of Plaintiffs' injuries.

24      33. The violations of Plaintiffs' Constitutional rights occurred as a result of the deliberate,
25  reckless, and malicious acts, omissions, policies, and practices of the Defendants, and each of them.
26  The resulting devastation to the Mullins family was an inevitable consequence of Defendants
27  shocking disregard of the dangers inherent in arming unqualified deputies and then failing to train
28  them. As a result of Defendants' acts and omissions, Kenneth Mullins sustained injuries to his

11

FIRST AMENDED COMPLAINT FOR DAMAGES

1  health, safety and person, which caused him extreme mental, physical and emotional pain and

2  suffering and, ultimately, death at the age of 32. These violations are compensable pursuant to

3  U.S.C. Section 1983. As a result of the Defendants' conduct, Plaintiffs have suffered the loss of

4  companionship, comfort, affection, solace, and society of their son and father.

5       34. 42 U.S.C. §1988 provides that reasonable attorneys' fees and costs are recoverable herein

6  by the prevailing party within the discretion of the court.

7       Wherefore, Plaintiffs pray for relief as set forth below:

8                    **SECOND CAUSE OF ACTION**

9    **42 U.S.C. § 1983: VIOLATION OF THE FOURTH AMENDMENT - AS TO ALL**

10                              **DEFENDANTS**

11      35. The allegations of paragraphs 1 through 34, are realleged and incorporated herein by

12  reference. Plaintiff Kayla Mullins acting through her guardian ad litem, Plaintiff Rosemary Mullins

13  is the successor in interest to Mr. Mullins's surviving claims, including his claims against

14  Defendants, and each of them, for violation of his Fourth Amendment rights arising from his

15  prolonged encounter with the Deputies who used unduly aggressive tactics and excessive force in

16  violation of his federal constitutional and statutory rights.

17      36. At all times mentioned herein, Mr. Mullins had a Fourth Amendment right to be free

18  from unreasonable search and seizure and from the use of excessive force at the hands of county

19  law-enforcement personnel operating under color of law. As set forth above, the actions of

20  Defendants, and each of them, violated Mr. Mullins's Fourth Amendment rights through their

21  conscious disregard of his rights, including the use of excessive force, by firing several shots into

22  Kenneth Mullins' body and head when he was unarmed despite the absence of any tangible threat

23  to the Deputies.

24      37. All of the acts and omissions of Defendants, and each of them, were undertaken under

25  color of law and in the exercise of the authority granted them by the County of Fresno and the Fresno

26  Sheriff's Department.

27      38. The violation of Plaintiffs' constitutional rights occurred as a result of the deliberate,

28  reckless, and malicious acts, omissions, policies, and customary practices of the County of Fresno

and its Sheriff's Department. As set forth above, Defendants have ratified the conduct of the Deputies who shot and killed Mr. Mullins, have announced and enacted policies that encourage the use of deadly force, have failed to train their deputies to accurately assess risk and to resolve situations with less-than-lethal force, have failed to provide deputies with body cameras, have established a custom and practice of using excessive and deadly force against unarmed civilians, and have failed to discipline miscreant deputies or otherwise seek to reduce the risks of future wrongful shootings. Defendants County of Fresno and the Fresno Sheriff's Office are therefore liable for their own misconduct and poor policies, which were a prime cause of Plaintiffs' injuries.

39. As a result of the Defendants' acts and omissions, Kenneth Mullins sustained injuries to his health, safety and person, which caused him extreme mental, physical and emotional pain and suffering and, ultimately, death, while causing his family the loss his companionship, comfort, affection, solace and society of their son and father, respectively.

40. 42 U.S.C. §1988 provides that reasonable attorneys' fees and costs are recoverable herein by the prevailing party within the discretion of the court.

Wherefore, Plaintiffs pray for relief as set forth below:

### THIRD CAUSE OF ACTION

### CIVIL CODE §52.1-BANE ACT VIOLATION – AS TO ALL DEFENDANTS

41. The allegations of paragraphs 1 through 40, are realleged and incorporated herein by reference.

42. California Civil Code section 43 provides that "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Like all Californians, the Mullins family, individually and collectively, had federal and state constitutional rights to enjoy their familial relationship, to life and liberty, and to be free from unreasonable seizures and use of force by persons acting under color of law.

43. Defendants, and each of them, acting within the course and scope of their duties, intentionally interfered with Mr. Mullins's rights through threats, intimidation, coercions, and force

1 | as alleged in detail above. Defendants and each of them were acting under color of law when they

2 | employed threats, intimidation, coercion, and use of force to injure and then kill Mr. Mullins.

3 |     44. Defendants, and each of them, intended to violate Mr. Mullins rights in acting as alleged

4 | above.

5 |     45. As a result of the violence, threats, coercion, intimidation and unjustified shooting, Mr.

6 | Mullins was harmed by the Defendants, The conduct of Fresno County Sheriff's Department and

7 | DOES 1-25, was a substantial factor in causing the injuries and damages sustained by Mr. Mullins.

8 |     46. The Tom Bane Civil Rights Act (Civil Code section 52.1) authorizes suit whenever a

9 | party interferes with another's enjoyment of constitutional and statutory liberties and rights. The

10 | same statute authorizes the award of attorneys' fees in an action such as this.

11 |     Wherefore, Plaintiffs pray for relief as set forth below:

12 | **FOURTH CAUSE OF ACTION**

13 | **WRONGFUL DEATH– AS TO ALL DEFENDANTS**

14 |     47. The allegations of paragraphs 1 through 46, are realleged and incorporated herein by

15 | reference.

16 |     48. As a result of the actions of Defendants, and each of them, Kenneth Mullins sustained

17 | injuries to his health, safety and person, which caused him great suffering and led to his wrongful

18 | death. Mr. Mullins had long been a source of financial support to his both Plaintiffs, as well as being

19 | a caregiver to his father at the end of his life. As a result of the Defendants' conduct, Plaintiffs have

20 | each suffered a loss of familial relationships, companionship, comfort, and financial and other

21 | support.

22 |     49. Defendants County of Fresno and Fresno Sheriff's Department have ratified the conduct

23 | of the Deputies who shot and killed Mr. Mullins, have announced and enacted policies that

24 | encourage the use of deadly force, have failed to train their deputies to accurately assess risk and to

25 | resolve situations with less-than-lethal force, have failed to provide deputies with body cameras,

26 | have established a custom and practice of using excessive and deadly force against unarmed

27 | civilians, and have failed to discipline miscreant deputies or otherwise seek to reduce the risks of

28 |

1   future wrongful shootings. Defendants are thus responsible for the wrongful death of Kenneth

2   Mullins caused by the acts and omissions of the Deputies and DOES 1-25.

3          Wherefore, Plaintiffs pray for relief as set forth below:

4                              **FIFTH CAUSE OF ACTION**

5                         **SURVIVOR – AS TO ALL DEFENDANTS**

6          50. The allegations of paragraphs 1 through 49, are realleged and incorporated herein by

7   reference.

8          51. Plaintiff Kayla Mullins brings this survivor action as a successor-in-interest to Mr.

9   Mullins through her guardian ad litem, Plaintiff Rosemary Mullins.

10         52. Defendants, and each of them, purposefully and recklessly violated Mr. Mullins's rights

11  by, inter alia, shooting and killing him without justification. Kenneth Mullins was unlawfully killed

12  by Fresno County Deputy Sheriffs as part of Defendants' pattern and practice of misusing excessive

13  and deadly force. The Deputies who shot Mr. Mullins acted with malice, oppression, and reckless

14  disregard for Mr. Mullins's life, as reflected in the use of kill shots to his head and the Deputies

15  refusal to use deadly measures to apprehend a befuddled trespasser.

16         53. Plaintiffs are informed and believe that Mr. Mullins's encounter with the Deputies lasted

17  more than half an hour during which time the Deputies harassed him in an unreasonable manner and

18  eventually lured him into the open at which time he was shot and killed. Plaintiffs seek all damages

19  available under Code of Civil Procedure section 377.30 et seq.

20         Wherefore, Plaintiffs pray for relief as set forth below:

21                             **SIXTH CAUSE OF ACTION**

22                         **BATTERY – AS TO ALL DEFENDANTS**

23         54. The allegations of paragraphs 1 through 53, are realleged and incorporated herein by

24  reference. Plaintiffs bring this claim as successor in interest to Mr. Mullins through his daughter,

25  Kayla Mullins.

26         55. Fresno County Deputy Sheriffs intentionally used excessive and unreasonable force

27  against Kenneth Mullins including, but not limited to, discharging their firearms multiple times,

28  shooting him dead. In doing so, the Fresno County Sheriff's Department acted with the intent to

FIRST AMENDED COMPLAINT FOR DAMAGES

1   inflict great bodily harm; indeed, the use of kill shots to Mr. Mullins's head reflects an intent to kill
2   rather than simply disable and apprehend. The Deputies lacked good cause for their behavior
3   towards an unarmed man.

4       56. Defendants' conduct resulted in harmful and offensive contact with Kenneth Mullins'
5   person, causing him to experience severe pain and suffering. Kenneth Mullins was shot multiple
6   times, including a "kill shot" to the head. The multiple bullet wounds resulted in internal injuries,
7   and the gunshot wound to his head caused a rupture to his skull and perforated his brain. These
8   injuries to his health, safety and person caused him extreme mental, physical, and emotional pain
9   and suffering and, ultimately, death.

10      57. At all relevant times, the Deputies acted under color of law and the authority granted to
11  them by the County of Fresno and the Fresno Sheriff's Department. In killing Mr. Mullins,
12  Defendants, and each of them, acted with malice, oppression, and reckless disregard towards Mr.
13  Mullins.

14      Wherefore, Plaintiffs pray for relief as set forth below:

15                          **SEVENTH CAUSE OF ACTION**

16                      **NEGLIGENCE – AS TO ALL DEFENDANTS**

17      58. The allegations of paragraphs 1 through 57, are realleged and incorporated herein by
18  reference.

19      59. Defendants, and each of them, owed Kenneth Mullins a duty to use care during the
20  Deputies prolong encounter with Mr. Mullins on March 6, 2020. The Deputies dispatched to the
21  scene negligently breached their duty to use due care, which directly and proximately resulted in the
22  injuries and, ultimately, the wrongful death of Kenneth Mullins.

23      60. As an actual, direct and proximate result of Defendants' negligence, Kenneth Mullins
24  sustained injuries to his health, safety and person, which caused him great mental, physical and
25  emotional pain and suffering, as well as led to his loss of life and the companionship, comfort,
26  affection, solace and society of his daughter and mother.

27      61. Defendants County of Fresno and Fresno County Sheriff's Department failed to
28  reasonably train the Deputies or to put in place meaningful policies and procedures to reduce the

FIRST AMENDED COMPLAINT FOR DAMAGES

1  use of excessive force. Through their dealings with Mr. Mullins, the Deputies acted under color of
2  law and the authority granted them by the County of Fresno and its Sheriff's Department, such that
3  all Defendants, and each of them, are responsible for the negligent acts and omissions of the
4  Deputies.

5      Wherefore, Plaintiffs pray for relief as set forth below:

6                  **EIGHTH CAUSE OF ACTION**

7          **DECLARATORY RELIEF– AS TO ALL DEFENDANTS**

8      62. The allegations of paragraph 1 through 61 are realleged and incorporated by this
9  reference.

10     63. Defendants, and each of them, are duty bound to act in a manner that ensures that all
11 sheriff deputies refrain from the use of excessive force and other needlessly confrontational tactics
12 when dealing with the homeless, and other marginalized residents of Fresno County. To discharge
13 this obligation, Defendants must have appropriate policies and procedures, including training in
14 deescalating confrontations, the use of nonlethal force when dealing with unarmed residents, the use
15 of unarmed personnel where conditions warrant, the use of body cameras to provide an accurate
16 record on review, and an effective system of independent review of alleged misconduct.

17     64. Plaintiffs are informed and believe that Defendants, and each of them, have failed to
18 implement effective policies and procedures such as appropriate training and equipment for deputies
19 to prevent the unreasonable use of force, including deadly force. Plaintiffs are informed and believe
20 that this failure to implement appropriate policies and procedures is reflected, inter alia, in the
21 following systemic shortcomings: (a) the repeated instances in which sheriffs use unjustified force,
22 including deadly force, including those that lead to complaints about the use of excessive force by
23 sheriffs; (b) the failure to thoroughly investigate complaints of sheriff misconduct; (c) the failure to
24 adequately discipline sheriffs for the unjustified use of force; (d) the failure to adequately train
25 sheriffs to deescalate confrontations; (e) the excessive reliance on armed personnel to deal with
26 minor disturbances; and (f) the failure to mandate the use of body cameras for all official
27 interactions.

28

1    65. Plaintiffs are informed and believe that, absent declaratory and injunctive relief,

2    Defendants, and each of them, will continue to insist that the Deputies did nothing wrong, thereby

3    inflicting needless anguish and distress on Plaintiffs. Further, Defendants have shown no willingness

4    to modify the policies and procedures that have resulted in the systematic use of excessive and

5    deadly force for Sheriff Deputies. The practices of the last seven years demonstrate that there will

6    be more shootings of unarmed civilians absent some change in policies and procedures, including

7    better training and discipline.

8    66. There is a real and actual controversy in that Defendants, and each of them contend that

9    they have acted lawfully while gainsaying the need for reforms.

10    67. Plaintiffs therefore seek a declaration that Defendants' continuing failure to institute

11    appropriate policies and training to reduce the use of unreasonable force is likely to result in the

12    violation of the rights of Plaintiffs and other residents of Fresno, such that pecuniary compensation

13    is not, by itself, an adequate remedy. Such a declaration would support a preliminary and permanent

14    injunction.

15    Wherefore, Plaintiffs pray for relief as set forth below:

16    **PLAINTIFFS REQUESTS JURY TRIAL**

17    **<u>PRAYER FOR RELIEF</u>**

18    WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against

19    County of Fresno; the Fresno Sheriff's Department; and DOES 1 to 25, inclusive, in their individual

20    capacity, as follows:

21    1. For general (non-economic) damages against all Defendants, jointly and severally, under

22    Federal and State law, in an amount to be proven at trial;

23    2. For special (economic) damages against all Defendants, jointly and severally, under

24    Federal and State law, in an amount to be proven at trial;

25    3. For attorneys' fees;

26    4. For costs of suit;

27    5. For such exemplary damages as may be permitted against any individual Doe who

28    willfully and maliciously shot and killed Mr. Mullins; and

FIRST AMENDED COMPLAINT FOR DAMAGES

6. For a preliminary injunction, and a permanent injunction, directing Defendants, and each of them, to do the following:

    (i)    Cease all practices and procedures that serve to facilitate the unreasonable use of force by sheriff deputies; and

    (ii)   Train and equip their employees in a manner that minimizes the unnecessary use of force, including, but not limited to, the use of de-escalation techniques, the use of unarmed personnel, the use of non-lethal force to effect an arrest, the effective screening of sheriff candidates, and an effective procedure for the independent review of all claims of sheriff misconduct and all instances of deadly force; and

    (iii)   To require all sheriff deputies of Defendant to be equipped with and to use body cameras at all times that sheriff deputies confront or engage with any individual; and

7. For any and all further relief as the Court deems just and proper.

Date:   April 9, 2021.

                       WAGNER LAW GROUP, PC

                       Mark Schallert
                       Law Office of Mark Schallert
                       *Attorneys for PLAINTIFFS*

FIRST AMENDED COMPLAINT FOR DAMAGES

# PROOF OF SERVICE
## (Code Civ. Proc., §§1013, subd. a, and 2015.5)

I declare that I am a citizen of the United States of America and a resident of the County of Fresno, California. I am over the age of 18 years and not a party to this action; my business address is 1233 West Shaw Avenue, Suite 106, Fresno, California 93711.

On April 9, 2021, I caused to be served the attached **FIRST AMENDED COMPLAINT FOR DAMAGES: 1. 42 U.S.C. Section 1983 –Violation of the Fourteenth Amendment; 2. 42 U.S.C. Section 1983 – Use of Excessive Force in Violation of the Fourth Amendment; 3. California Civil Code §52.1 – Bane Act Violation; 4. Wrongful Death and Intentional Infliction of Emotional Distress; 5. Survivor; 6. Battery; 7. Negligence; 8. Injunctive Relief,** on each of the interested parties in said cause as indicated below:

(XXXX)      **(BY ELECTRONIC MAIL)** I caused a copy of said pleadings to be sent via electronic mail to the parties listed below:
James D. Weakley, Esq at Jim@walaw-fresno.com: and
Brande L. Gustafson, Esq. at Brande@walaw-fresno.com

(XXXX)      **(BY REGULAR MAIL)** I caused a copy of said pleadings to be placed in a United States mail depository. I am readily familiar with my office's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing.

**James D. Weakley, Esq.**
**Brande L. Gustafson, Esq.**
**WEAKLEY & ARENDT**
**A Professional Corporation**
**5200 N. Palm Avenue, Suite 211**
**Fresno, California 93704**

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 9, 2021, at Fresno, California.

Audrey Moreno

PROOF OF SERVICE - 1