# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY HINOJOSA MULLINS, as an individual, and as guardian ad litem for KAYLA ALICIA MULLINS (a minor),<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF FRESNO, FRESNO COUNTY SHERIFF'S DEPARTMENT; and DOES 1 through 25,<br><br>Defendants. | CASE NO. 1:21-cv-00405-AWI-SAB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 9) |

Plaintiff Rosemary Mullins filed this action in Fresno Superior Court on January 15, 2021 as an individual and as guardian ad litem for her minor granddaughter, Kayla Mullins, alleging claims under state and federal law in connection with the fatal shooting of her son and Kayla Mullins's father, Kenneth Mullins ("Mullins"). Doc. No. 1-1 at 6.[1] The action was removed to this Court on March 12, 2021, Doc. No. 1, and an amended complaint (the "First Amended Complaint" or "FAC") was filed on April 9, 2021. Doc. No. 6. Defendants County of Fresno (the "County") and Fresno County Sheriff's Department (the "Sheriff's Department," and together with the County, "Defendants") have brought a motion to dismiss certain claims in the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] See Doc. No. 9. The motion

---

[1] Unless otherwise noted, page citations are to the page number in the CM/ECF stamp at the top of each page of documents filed with the Court electronically.

[2] "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

has been fully briefed and the Court has deemed it suitable for decision without oral argument, pursuant to Local Rule 230(g). For the reasons that follow, the motion will be granted in part and denied in part.

## **BACKGROUND**[3]

Kenneth Mullins was found sleeping at an automobile dismantling shop by the owner at approximately 5:00 p.m. on March 6, 2020. Doc. No. 6 ¶ 5. The shop was closed for the day and there were no other persons in the vicinity at the time. Id. The owner called the Sheriff's Department to report a trespasser, stating that he had had no contact with him. Id.

The Sheriff's Department dispatched several deputies (including, reportedly, volunteer deputies) to the scene and a "30-minute standoff" ensued, culminating in the shooting death of Mullins. Doc. No. 6 ¶¶ 6-10. The Sheriff's Department issued a statement describing what transpired as follows:

> Deputies arrived and surrounded the building. They used a loudspeaker to call out to [Mullins] for approximately 30 minutes, but he never responded … A few minutes later he exited the building. Two deputies staged nearby made contact with [Mullins] and gave him commands. [Mullins] did not comply, and two deputies fired their guns multiple times, striking [Mullins]. He was pronounced deceased at the scene … A closer examination of Mullins showed he was not in possession of a weapon.

Id. ¶ 7. As set forth in the FAC, Mullins was killed by "a perforation of the brain and penetration of the skull caused by gunshot wounds to the head by Fresno County Deputy Sheriffs." Id. ¶ 8. Mullins "never threatened or sought to injure" anyone and was "unarmed and apparently in no condition to protect himself[,] let alone injure another" at the time of his death. Id. The deputies failed to "use pepper spray, a baton, a taser, or any other non-lethal weapon" and went "directly to the use of lethal force rather than first seeking to use less lethal means." Id. ¶ 9. According to Plaintiffs, "[t]he deputies' decision to shoot [] Mullins multiple times—including one or more 'kill shots' to his head—evinced their intention to execute [him] for the act of trespassing, rather than maim or otherwise disable [him] in order to apprehend him." Id.

---

[3] This section summarizes allegations set forth in the FAC. See Doc. No. 6.

Rosemary Mullins is Mullins's biological mother and Kayla Mullins, a minor, is Mullins's only biological daughter. Doc. No. 6 ¶ 1. Rosemary Mullins brings this action as an individual and as guardian ad litem for Kayla Mullins, alleging claims against the County and the Sheriff's Department under 42 U.S.C § 1983, Section 52.1 of the California Civil Code ("Bane Act"), Section 337.30 of the California Civil Code and California common law. Id. ¶¶ 20-67.

## **LEGAL FRAMEWORK**

Under Rule 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121−22 (9th Cir. 2008). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663 (citation omitted).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). Courts are not, however, "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted

source and internal quotation marks omitted); and complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).

If a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source omitted).

## DISCUSSION

The Court will address the arguments raised in Defendants' motion to dismiss in turn.

### I. FRESNO COUNTY SHERIFF'S DEPARTMENT AS A DEFENDANT

Defendants contend that the Sheriff's Department should be dismissed as a defendant in this action because "[d]epartments or sub-units of a municipal entity are generally not proper parties in a Section 1983 lawsuit." Doc. No. 9-1 at 13:9-13. Further, they contend that it is unnecessary to sue both the County and the Sheriff's Department to attain full relief and that doing so "would lead to the possible result of an impermissible double recovery against a single funding source." Id. at 13:9-20. The Court will first address the question of whether the Sheriff's Department is properly named as a defendant on Plaintiffs' Section 1983 claims and then address the question of whether it is proper to name the Sheriff's Department as a defendant on Plaintiffs' state law claims.

#### A. Section 1983 Claims

A claim for civil rights violations under Section 1983 requires a "person" who acted under color of state law. See 42 U.S.C. § 1983. Local governmental units, such as counties and cities, are considered "persons" within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); Cty. of Los Angeles v. Superior Ct., 68 Cal. App. 4th 1166, 1171 (1998). Local government sub-units, however, are not generally considered "persons" within the meaning of Section 1983. See Vance v. County of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal.1996) (stating that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality" and dismissing the Santa Clara Department of

1 Corrections from the action); see also Sanders v. Aranas, 2008 WL 268972, at *3 (E.D. Cal. Jan.
2 29, 2008) (finding that the Fresno Police Department cannot be sued under Section 1983 because
3 it is a sub-division of the City of Fresno) (Ishii, J.). The Court therefore agrees with Defendants
4 that, as a subdivision of Fresno County, the Fresno County Sheriff's Department is not a proper
5 defendant on Plaintiffs' Section 1983 claims. See Dean v. Barber, 951 F.2d 1210, 1214 (11th
6 Cir.1992) (affirming district court's dismissal of claims against a county sheriff's department);
7 Brockmeier v. Solano County Sheriff's Dept., 2006 WL 3760276, *4 (E.D. Cal. 2006) (finding
8 that the Solano County Sheriff's Department was not a proper defendant on Section 1983 claims).
9 Further, Plaintiffs concede this point. Doc. No. 10 at 9:17-18. The Sheriff's Department will
10 therefore be dismissed as a defendant on the Section 1983 claims.

11 **B.     State Law Claims**

12 Although Plaintiffs concede that the Sherriff's Department is not subject to suit under
13 Section 1983, they argue that the Sheriff's Department is properly named as a defendant on state
14 law claims pursuant to Section 811.2 of the California Government Code. Doc. No. 10 at 9:20-26.
15 Defendants, for their part, cite an order issued by this Court in *Morales v. City of Delano*, as well
16 as an order from another Eastern District court in *Shannon v. County of Sacramento* in support of
17 the proposition that the Sheriff's Department is a duplicative defendant. Doc. No. 9-1 at 13:14-20.

18 In *Morales v. City of Delano*, this Court held—albeit in the context of a Section 1983
19 claim—that the City of Delano and the City of Delano Police Department ("Delano Police
20 Department") were properly viewed as a single legal entity and that dismissal of the Delano Police
21 Department was further warranted by the "likelihood of improper double recovery from a single
22 funding source." 2010 WL 2942645, at *5 (E.D. Cal. July 23, 2010). In *Shannon v. County of*
23 *Sacramento*, similarly, the court dismissed the Sacramento County Sheriff's Department as a
24 defendant on a wrongful death claim on a finding that "[t]o attain full relief, it is unnecessary to
25 sue both a county and the county sheriff's office for identical claims with identical theories of
26 liability." 2016 WL 1138190, at *6 (E.D. Cal. Mar. 23, 2016).

27 Plaintiffs have set forth no allegations supporting an inference that the County and the
28 Sheriff's Department are different legal entities or that they represent distinct sources of funding

5

for potential recovery. The Court will therefore follow the reasoning in cases such as *Morales* and *Shannon* and dismiss the Sheriff's Department as a redundant and unnecessary defendant on Plaintiffs' state law claims, in addition to dismissing it as a defendant on the Section 1983 claims.[4] See Est. of Jackson v. City of Modesto, 2021 WL 4819604, at *22 & n.18 (E.D. Cal. Oct. 14, 2021) (finding "no utility or purpose" in naming both the City of Modesto and the Modesto Police Department as defendants and dismissing the latter "as an unnecessary and redundant party").

## II. SECOND CAUSE OF ACTION FOR VIOLATION OF FOURTH AMENDMENT

Defendants argue that a claim for loss of familial companionship cannot properly be brought under the Fourth Amendment and, that in any event, a claim for loss of familial companionship under the Fourth Amendment in the second cause of action would be duplicative of Plaintiffs' claim for loss of familial companionship under the Fourteenth Amendment, as set forth in the first cause of action. Doc. No. 9-1 at 13:22-14:10. Plaintiffs state in the opposition that they are not asserting a claim for loss of familial companionship (or its equivalent) under the Fourth Amendment, Doc. No. 10 at 10:4-13, and Defendants have therefore withdrawn this portion of their motion to dismiss. Doc. No. 11 at 2:24-28.

## III. FIRST CAUSE OF ACTION FOR VIOLATION OF FOURTEENTH AMENDMENT

Defendants contend that a Section 1983 claim for excessive force can only be brought under the Fourth Amendment and that Plaintiffs' first cause of action, which is brought under the Fourteenth Amendment, must therefore be dismissed to the extent it is based on an excessive force violation. Doc. No. 9-1 at 14:13-28. Plaintiffs do not contest Defendants' characterization of applicable law but contend that they do not seek to state an excessive force claim under the Fourteenth Amendment and that the first cause of action is brought only "to 'vindicate their own rights' as the mother and daughter who were wrongfully deprived of their familial relationship with [] Mullins." Doc. No. 10 at 10:16-23.

---

[4] If Plaintiffs have a legitimate and legally relevant basis for naming both the County and the Sheriff's Department as separate defendants in this action, Plaintiffs may file a motion for reconsideration. Such motion must be supported by citation to relevant authority and explain why Plaintiffs wish to pursue identical claims against both entities. Otherwise, the Court remains of the view that naming a municipality and its sub-unit as separate defendants on the same claims is generally a useless redundancy with risk of unnecessary inefficiencies and complications.

The first cause of action, however, alleges as follows:

> Defendants, and each of them, violated the Fourteenth Amendment rights of Mr. Mullins, his mother, and his daughter when the Deputies used excessive and deadly force under color of law against an unarmed man. Defendants' conduct further violated Plaintiffs' Fourteenth Amendment rights by wrongfully depriving Mr. Mullins of his life and his mother and daughter of their familial relationship.

Doc. No. 6 ¶ 30.

On their face, these allegations speak as much to excessive force as they do to loss of familial companionship (the avowed predicate of Plaintiffs' Fourteenth Amendment claim). The Court agrees with Defendants (as Plaintiffs implicitly do) that excessive force claims are subject to the reasonableness standard under the Fourth Amendment and will therefore dismiss the first cause of action with prejudice to the extent it can be read to allege an excessive force claim under the Fourteenth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989); Tennessee v. Garner, 471 U.S. 1, 7–8 (1985); see also Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

## IV. *MONELL* LIABILITY

### A. Applicable Law

Municipalities are considered "persons" under Section 1983 and therefore may be liable for causing a constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Castro v. Cty. of Los Angeles, 797 F.3d 654, 670 (9th Cir. 2015). A municipality, however, "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 under a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis original); see Castro, 797 F.3d at 670. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom." Monell, 436 U.S. at 694; Price v. Sery, 513 F.3d 962, 966 (9th Cir. Or. 2008).

"Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3)

7

explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur." McFarland v. City of Clovis, 163 F. Supp. 3d 798, 802 (E.D. Cal. 2016) (Ishii, J.).

The Ninth Circuit has found that "[t]here are three ways to show a policy or custom of a municipality":

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting Ulrich v. City and Cty. of San Francisco, 308 F.3d 968, 984–85 (9th Cir. 2002)); see also Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014). To elaborate, a "policy," for purposes of *Monell* liability, is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008) (citation and internal quotation marks omitted); Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); whereas a "custom," for purposes of *Monell* liability, is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 1231–32 (9th Cir. 1991). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified in other respects by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001); see also McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000).

A failure to train or inadequate training may form the basis for municipal liability under

1  Section 1983. Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014); Long, 442 F.3d
2  at 1186. Under such a theory, "[t]he issue is whether the training program is adequate and, if it is
3  not, whether such inadequate training can justifiably be said to represent municipal policy." Long,
4  442 F.3d at 1186. "Only where a municipality's failure to train its employees in a relevant respect
5  evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be
6  properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton,
7  Ohio v. Harris, 489 U.S. 378, 389 (1989); Long v. City & County of Honolulu, 511 F.3d 901, 907
8  (9th Cir. 2007). A "pattern of tortious conduct," despite the existence of a training program, or
9  "highly predictable" constitutional violations due to a "failure to equip law enforcement officers
10 with specific tools to handle recurring situations" are circumstances in which liability for failure to
11 train may be imposed. See Board of County Comm'rs v. Brown, 520 U.S. 397, 407–10 (1997);
12 Long, 442 F.3d at 1186–87.

13      The Ninth Circuit previously held that "a claim of municipal liability under § 1983 is
14 sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare
15 allegation that the individual officers' conduct conformed to official policy, custom, or practice."
16 A.E. ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012). The Ninth Circuit has
17 since made it clear, however, that claims of *Monell* liability must comply with the basic principles
18 set forth in *Twombly* and *Iqbal* in that: (1) the complaint "may not simply recite the elements of a
19 cause of action, but must contain sufficient allegations of underlying facts to give fair notice and
20 to enable the opposing party to defend itself effectively"; and (2) the "factual allegations that are
21 taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the
22 opposing party to be subjected to the expense of discovery and continued litigation." A.E., 666
23 F.3d at 636–37 (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

24      **B.     Discussion**

25      Defendants contend that Plaintiffs' allegations are conclusory and implausible and that
26 Plaintiffs fail to allege *Monell* liability through any method. Doc. No. 9-1, Part III.D. Further,
27 Defendants take the position that a *Monell* claim can be broken down and dismissed in parts based
28 on the method used to allege municipal liability for a given constitutional violation. See id. at

17:25-26 (calling for dismissal of the "official policy portion" of Plaintiffs' *Monell* claim); 19:12-13 (calling for dismissal of the "custom and practice portion" of the Plaintiffs' *Monell* claim); 21:5-6 (calling for dismissal of the "failure to train portion" of Plaintiffs' *Monell* claim); 22:12-13 (calling for dismissal of the "failure to discipline portion" of Plaintiffs' *Monell* claim). Plaintiffs reject Defendants' piecemeal approach to *Monell* liability, Doc. No. 10 at 12:1-2, and contend that "interrelated" factual allegations in the FAC cut across evidentiary categories and collectively show "the customary use of excessive force over the years" on the part of the Sheriff's Department. Id. at 12:5-7.

Reviewing the FAC, Plaintiffs allege that, as the head of the Sheriff's Department, Sheriff Margaret Mims "publicly adopted policies that promote the customary use of excessive and deadly force in situations … where less extreme procedures would accomplish the public's interest," Doc. No. 6 ¶¶ 13-14; "became an outspoken critic of attempts to rei[]n in the use of excessive force when she challenged legislation that sought to require sheriffs and other law enforcement personnel to use deadly force only when there w[ere] no reasonable alternatives"; and bucked "nationwide calls to de-escalate law enforcement encounters with unarmed civilians" by emphasizing that "her deputies should have 'maximum flexibility' to use 'whatever' methods they need to control suspects." Id. ¶ 14. Further, Plaintiffs allege that the Sheriff's Department has a feature entitled "Officer Involved Shooting Myths" on its website that links to articles minimizing police shootings. Id. ¶ 15.

In addition, Plaintiffs allege that the Sheriff's Department fails to conduct background checks sufficient to determine whether applicants are prone to misusing police power and fails to train deputies in "de-escalating conflicts," the "use of non-lethal force" and "how to avoid deadly force at important steps during an encounter with a potentially dangerous person." Doc. No. 6 ¶¶ 16, 20-21. Similarly, Plaintiffs allege that, for financial reasons, the Sheriff's Department maintains a Deputy Reserve Unit of 20+ volunteer deputies who are permitted to carry firearms and put in "life and death" situations despite insufficient training. Id. ¶¶ 17-18.

Plaintiffs also allege that the Fresno County Sheriff's Department was among the worst sheriff's departments in California in the seven-year period from 2013 through 2019 with respect

to the rate of deadly force per arrest and the number of fatal shootings by deputies as a percentage of total homicides. Doc. No. ¶ 23. And they allege that just 3% of complaints against the Sheriff's Department are decided in favor of civilians; that unlike most other jurisdictions, the Fresno County Sheriff's Department does not require body cameras on deputies; and that the Fresno County Sheriff's Department has one of the worst "accountability" ratings in California. Id. ¶ 24.

These are not—as Defendants contend—"conclusory" allegations. They are factual allegations that collectively support a reasonable inference that the Sheriff's Department had a custom (and possibly policy) emanating from the top and permeating multiple relevant aspects of the organization (including functions like hiring, training and discipline) that deemphasized de-escalation and the use of non-lethal force, with disregard the safety (and constitutional rights) of civilians. See Iqbal, 556 U.S. at 678. Moreover, these allegations support a plausible inference that this policy or custom led to an elevated number of fatal shootings at the hands of deputies, such as the one in question here, while giving fair notice, in the Court's view, "of what [Plaintiffs' *Monell*] claim is and the grounds upon which it rests." See Twombly, 550 U.S. at 555.

Finally, Defendants provide no authority that supports their contention that Plaintiffs' *Monell* claim should be deconstructed and dismissed piecemeal based on the form of proof—or more specifically, the types of allegations—offered to show "policy or custom." See Doc. No. 11 at 3:8-19. In *Baird v. Becerra*, for example, the court simply found that plaintiffs' challenge to a firearm regulation under the Fourth Amendment was not legally cognizable and pared back causes of action to the extent they relied on such a theory. 2020 WL 5107614, at *9 (E.D. Cal. Aug. 31, 2020). The Court does not see how limiting claims to cognizable rights is analogous to the deconstruction of Plaintiffs' *Monell* claim that Defendants propose here, and the other cases cited by Plaintiffs on this point appear to be equally (if not more) irrelevant. The Court therefore declines to dismiss any portion of Plaintiffs' *Monell* claim.

## V.  STATUTORY BASIS FOR LIABILITY ON STATE LAW CLAIMS

### A.  Parties' Arguments

Defendants contend that Plaintiffs' third, fourth, fifth, sixth and seventh causes of action must be dismissed because Plaintiffs "do not identify a statute or 'enactment' which establishes a

basis for liability against [the Defendants] for the state law claims alleging battery, negligence, wrongful death, survival, or violation of California Civil Code section 52.1" or otherwise "plead with particularity a statutory duty" on the part Defendants. Doc. No. 9-1 at 23:1-3, 24:15-17.

Plaintiffs argue that, under Section 815.2 of the California Government Code, Defendants can have vicarious liability for "the negligent acts or omissions of their employees" in some instances and that, as alleged in a proposed Second Amended Complaint ("SAC") (as attached to Plaintiffs' opposition), Section 835a of the California Penal Code (addressing the use of deadly force by law enforcement officers) provides a statutory basis for direct liability on the part of Defendants as government entities. Doc. No. 10:9-22.

Defendants argue on reply that the FAC failed to allege Section 815.2 as the basis for vicarious liability. Doc. No. 11 at 5:18-24. Further, they contend that Section 835a does not provide a basis for direct liability against government entities and that, in any event, it was not alleged as a basis for direct liability in the FAC. Id. at 5:25-6:11.

**B.     Discussion**

Under the California Government Claims Act (Cal. Gov. Code, § 810 et seq.), "a public entity is not liable for injury arising from an act or omission except as provided by statute." Hoff v. Vacaville Unified Sch. Dist., 19 Cal. 4th 925, 932 (1998) (citation and internal quotation marks omitted); Cal. Gov. Code, § 815, subd. (a). Thus, in California, "all government tort liability must be based on statute." Id. (citation and internal quotation marks omitted); Churchman v. Bay Area Rapid Transit Dist., 39 Cal. App. 5th 246, 250 (2019). As to vicarious liability, Section 815.2(a) of the California Government Code "expressly makes the doctrine of *respondeat superior* applicable to public employers." Hoff, 19 Cal.4th at 932. Specifically, a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would … have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2(a). Direct liability, for its part, "must be based on a specific statute declaring [public entities] to be liable, or at least creating some specific duty of care" on the part of public entities. Eastburn v. Reg'l Fire Prot. Auth., 31 Cal. 4th 1175, 1183 (2003); Leon v. County of Riverside, 64 Cal. App. 5th 837, 850 (2021). In

either case, a plaintiff must plead the statutory basis for a claim against a government entity. Morse v. Cty. of Merced, 2016 WL 3254034, at *6 (E.D. Cal. June 13, 2016) (citing Susman v. City of Los Angeles, 269 Cal. App. 2d 803, 808–09 (1969)); see also Lopez v. Southern Cal. Rapid Dist., 40 Cal. 3d 780, 795 (1985). Failure to do so provides a ground for dismissal under Rule 12(b)(6). See Keyes v. Santa Clara Valley Water Dist., 128 Cal. App. 3d 882, 885–86 (1982) (complaint properly subject to general demurrer for failure to state a claim where the complaint did not plead the statutory basis for liability).

  As Defendants point out, Section 835a of the California Penal Code speaks to the conduct and duties of peace officers, with no mention of the public entities employing such persons. See Cal. Penal Code § 835a. It is therefore hard to see how it could be read to impose a duty on the Defendants. See In re Groundwater Cases,154 Cal. App. 4th 659, 689 (2007) ("the enactment allegedly creating the mandatory duty must impose a duty on the specific public entity sought to be held liable" and that "the mandatory nature of the duty must be phrased in explicit and forceful language" (citations and internal quotation marks omitted)). In any event, it is undisputed that Section 835a is not alleged in the FAC, and it is similarly undisputed that the FAC does not alleged Section 815.2 as a basis for vicarious liability.

  The third cause of action, however, is expressly brought under Section 52.1 of the California Civil Code, which at least one court in the Eastern District of California has read to provide claims against public entities. See Morse v. Cty. of Merced, 2016 WL 3254034, at *6 (E.D. Cal. June 13, 2016) (stating "[i]t appears claims under § 52.1 may be brought against public entities") (citing Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947, 950 (2012) (Bane Act claims brought against Los Angeles County)); see also Dorger v. City of Napa, 2012 WL 3791447, at *7 (N.D. Cal. Aug. 31, 2012) (stating a public entity may be considered a "person" subject to liability under Section 52.1); Salazar v. Schwarzenegger, 2007 WL 9662364, at *6 (C.D. Cal. Oct. 23, 2007) (stating that statutory immunity "may shield a public entity from direct liability premised on Civil Code § 52.1"). Defendants make no showing to the contrary. As such, the fourth, fifth, sixth and seventh causes of action will be dismissed without prejudice to proper

repleading,[5] see Lang v. County of Sonoma, 2012 WL 4674527, *5 (N.D. Cal. Oct. 2, 2012), but the Court declines to dismiss the third cause of action for failure to plead a statutory predicate for public entity liability.

## VI. WRONGFUL DEATH CLAIM

### A. Duplication of Seventh Cause of Action for Negligence

Defendants contend that the fourth cause of action for wrongful death should be dismissed as duplicative because it is "premised on the same underlying conduct as the seventh cause of action for negligence." Despite the fact their elements can overlap, however, see Jacoves v. United Merch. Corp., 9 Cal. App. 4th 88, 105 (1992), negligence and wrongful death are separate causes of action under California law. Specifically, Section 377.60 "creates a new cause of action in favor of [] heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. " Est. of Bock ex rel. Bock v. Cty. of Sutter, 2012 WL 423704, at *14 (E.D. Cal. Feb. 8, 2012) (quoting Ruiz v. Podolsky, 50 Cal.4th 838, 844 (Cal. 2010)) (internal quotation marks omitted). The Court therefore declines to dismiss Plaintiffs' wrongful death claim on the grounds that it is duplicative of the negligence claim. See Enriquez v. City of Fresno, 2010 WL 2490969, at *7 (E.D. Cal. June 16, 2010) (Ishii, J.) ("The court also notes that, although Plaintiffs' claims for negligence and wrongful death are pled from the same facts, wrongful death and negligence are, in the abstract, separate theories of recovery having separate elements. Thus, while the facts as currently pled may be indistinguishable as to both claims, the facts as fully developed following discovery may favor one claim over the other. The court will decline to dismiss Plaintiffs' negligence claim on the theory that it is redundant to Plaintiffs' wrongful death claim.")

### B. Rosemary Mullins's Standing for Wrongful Death Claim

Defendants argue that Rosemary Mullins fails to satisfy the standing requirements under Section 377.60 for a wrongful death claim because it is undisputed that Mullins has a child—Plaintiff Kayla Mullins—and Rosemary Mullins has failed to allege facts showing that she herself

---

[5] The Court notes Defendants' argument that there is no statutory basis for public entity liability for negligent hiring and training. Doc. No. 9-1 at 23:17-25. The Court will, however, allow Plaintiffs an opportunity to reallege negligence with respect hiring and training to the extent Plaintiffs can, in good faith, set forth a statutory basis for such a claim.

was "dependent" on Mullins. Doc. No. 9-1 at 25:8-27. Plaintiffs argue that Rosemary Mullins has standing to bring this claim because the FAC alleges that "Mullins had long been a source of financial support to both Plaintiffs, as well as being a caregiver to his father at the end of his life" and, similarly, that Mullins "was a source of direct and indirect financial support, including being a caregiver to his father during his illness." Doc. No. 10 at 16:11-25.

The Court agrees that these allegations are insufficient to establish that Rosemary Mullins has standing for a Section 377.60 claim, since the allegation as to end-of-life care pertains to Mullins's deceased father (not to Rosemary Mullins) and the Court cannot infer from the mere allegation that Mullins was "a source of financial support" that Rosemary Mullins was dependent on him for "necessities of life" prior to his death. Soto v. BorgWarner Morse TEC Inc., 239 Cal. App. 4th 165, 189 (2015), as modified (Aug. 20, 2015) (citation and internal quotation marks omitted). The Section 377.60 claim will therefore be dismissed for lack of standing to the extent it is brought by Rosemary Mullins, without prejudice to repleading with factual allegations showing the requisite type and level of dependency.

## VII.   STANDING FOR DECLARATORY OR INJUNCTIVE RELIEF

Defendants argue that Plaintiffs' lack standing for declaratory or injunctive relief because they have failed to allege current or future injury in connection with the use of excessive force by deputies. Doc. No. 9-1 at 26:5-27:25. Plaintiffs, for their part, argue that: the point is moot since the proposed SAC (as attached to the opposition) "drops the cause of action for Declaratory and Injunctive Relief"; they have standing to seek injunctive relief on their Bane Act (Section 52.1) claim; and it is too early in the case to rule out injunctive relief as a remedy. Doc. No. 10 at 16:27-17:27.

Given Plaintiffs' statement that they do not intend to prosecute a claim for declaratory relief, the eighth cause of action will be dismissed without leave to amend. See Fed. R. Civ. Pro. 41(b); Reed v. Wilmington Tr., N.A., 2016 WL 3124611, at *7 (N.D. Cal. June 3, 2016). Further, "[s]tanding must be shown with respect to each form of relief sought," including injunctive relief. Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). The Court agrees with Defendants that Plaintiffs have not alleged—and cannot allege—the "imminent 'prospect of future

injury' " at the hands of Fresno County Sheriff's deputies required for standing under Article III of the United States Constitution for injunctive relief. See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 868 (9th Cir. 2014); see also City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1982) (standing for injunctive relief requires that the "threat to the plaintiffs" of future injury be "sufficiently real and immediate"). Nor does the Court see any justification for reading Section 52.1 of the California Civil Code to fashion an exception to this well-settled standing requirement, even if the language of Section 52.1 lent itself to such an interpretation (which in the Court's view, it does not). Cf. Burns v. Tristar Prod., Inc., 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) (declining to follow case law purporting to create an exception to the standing requirement for injunctive relief on the grounds that such case law "does not square with Article III's mandate"). Plaintiffs' prayer for injunctive relief will therefore be dismissed with prejudice. See Reinhardt v. Gemini Motor Transp., 869 F. Supp. 2d 1158, 1174 (E.D. Cal. 2012) (Ishii, J.) (stating that the Ninth Circuit has held that Rule 12(b)(6) is the proper mechanism for challenging a complaint's request for relief that is unavailable as a matter of law (citing Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 974–75 (9th Cir. 2010)).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the FAC will be granted in part and denied in part.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that the motion to dismiss the First Amended Complaint brought by Fresno County and the Fresno County Sheriff's Department (Doc. No. 9) is GRANTED IN PART and DENIED IN PART as follows:

1. The motion is GRANTED in that:
   a. The Fresno County Sherriff's Department is DISMISSED WITH PREJUDICE from this case as a defendant;
   b. The first cause of action for violation of rights under the Fourteenth Amendment is DISMISSED WITH PREJUDICE to the extent it purports to allege an excessive force claim;

     c. The fourth, fifth, sixth and seventh causes of action are DISMISSED WITH LEAVE TO AMEND for failure to allege a statutory predicate for public entity liability;

     d. The fourth cause of action is further DISMISSED WITH LEAVE TO AMEND to the extent it is alleged by Rosemary Mullins;

     e. The eighth cause of action for declaratory relief and the prayer for injunctive relief are DISMISSED WITH PREJUDICE;

2. The motion is DENIED in all other respects;

3. Plaintiffs are GRANTED 21 days from the date of electronic service of this order to file a Second Amended Complaint ("SAC") consistent with the findings and analysis in this order;

4. Defendants will have 21 days from the date of electronic service of any SAC to answer or otherwise respond to the SAC;

5. If Plaintiffs do not file a SAC within 21 days of electronic service of this order, leave to amend will be automatically and immediately withdrawn, with no further notice to the Parties, and Defendants will then have an additional 21 days to answer the FAC consistent with this order; and

6. This matter is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   November 15, 2021                        /s/ SENIOR DISTRICT JUDGE